**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Anthony Blue, | ) | **CASE NO. 1:26 CV 1084** |
| | ) | |
| | ) | |
| Plaintiff, | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| vs. | ) | |
| | ) | |
| Jared Adkins, et al., | ) | |
| | ) | **Memorandum Opinion and Order** |
| | ) | |
| Defendants. | ) | |

**INTRODUCTION**

This matter is before the Court upon Plaintiffs'[sic] Motion for Partical[sic] Summary

Judgment (Doc. 1-4) and Defendants' Motion to Dismiss Pursuant to Civ. R. 12(b)(6) (Doc. 6).

This is a Section 1983 case. For the reasons that follow, Plaintiffs'[sic] Motion for Partical[sic]

Summary Judgment is DENIED and Defendants' Motion to Dismiss Pursuant to Civ. R. 12(b)(6) is

GRANTED.

**FACTS**

The following facts come from plaintiff's complaint filed in this case. (Doc. 1.) On or about

September 6, 2024, Officer Jared Adkins ("Officer Adkins") and Officer John Doe ("Officer Doe")

of the City of Lorain Police Department were conducting surveillance outside plaintiff Anthony

Blue's ("Plaintiff" or "Blue") residence after receiving anonymous complaints of drug activity

occurring there. Around the same time, Plaintiff returned home carrying a bag. He walked to the back of the home and placed the bag in an enclosed porch. Plaintiff then encountered Officer Adkins in the driveway, who placed Plaintiff under arrest for an outstanding child support warrant.

After Officer Adkins handcuffed Plaintiff and placed him in the back of a patrol car, Officer Adkins and several other officers entered Plaintiff's enclosed porch, recovered the bag Plaintiff had been carrying when he arrived home, and searched the bag. As a result of that search, Plaintiff was charged with three drug-related felonies in the Lorain County Common Pleas Court ("Common Pleas Court"), Case No. 24CR12380.

Plaintiff spent approximately 13 months incarcerated after being indicted for the drug charges. He was released when the case was dismissed after the Common Pleas Court ruled that the officers' search of the bag violated Plaintiff's Fourth Amendment rights against unreasonable searches and seizures.

Plaintiff has now brought suit against Officer Adkins, Officer Joe Doe, and the City of Lorain (collectively, "Defendants"), alleging claims under 42 U.S.C. § 1983 and for trespass, invasion of privacy, and intentional and/or negligence infliction of emotional distress. Attached to Plaintiff's complaint was Plaintiffs'[sic] Motion for Partical[sic] Summary Judgment ("Plaintiff's Motion"). (Doc. 1-4.) Defendants opposed Plaintiff's motion and filed their Motion to Dismiss Pursuant to Civ. R. 12(b)(6) ("Defendants' Motion"). Plaintiff opposed Defendants' motion. Neither party filed a reply in support of their respective motion during the time afforded by the Local Rules. LR 7.1(e).

**DISCUSSION**

Plaintiff's Motion asks this Court to enter judgment in Plaintiff's favor as to all claims except his claim for intentional and/or negligence infliction of emotional distress. Defendants' motion asks this Court to dismiss Plaintiff's *Monell*[1] claims against the City of Lorain and his claim for intentional and/or negligence infliction of emotional distress. The Court will address each motion in turn.

**A.  Plaintiff's Motion**

Plaintiff argues that summary judgment is appropriate as to most of his claims because Defendants are precluded from relitigating issues determined by the Common Pleas Court. Plaintiff's position is not well taken.

Under Ohio law,[2] "issue preclusion precludes the relitigation of an issue that has been actually and necessarily litigated and determined in a prior action." *MetroHealth Med. Ctr. v. Hoffman-LaRoche, Inc.*, 685 N.E.2d 529, 533 (Ohio 1997) (citation and internal quotations omitted). According to the Ohio Supreme Court, issue preclusion applies when a fact or issue "(1) was actually and directly litigated in the prior action, (2) was passed upon and determined by a court of competent jurisdiction, and (3) when the party against whom [issue preclusion] is asserted was a party in privity with a party to the prior action." *Thompson v. Wing*, 637 N.E.2d 917, 923 (Ohio 1994). To determine whether privity between parties exist, Ohio courts "'look behind the

---

[1] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

[2] "[F]ederal court[s] must apply the law of the state in which the prior judgment was rendered in determining whether and to what extent the prior judgment should be given preclusive effect in a federal action." *In re Fordu*, 201 F.3d 693, 703 (6th Cir. 1999).

nominal parties to the substance of the cause to determine the real parties in interest.'" *Fort Frye Teachers Ass'n v. State Employment Relations Bd.*, 692 N.E.2d 140, 144 (Ohio 1998) (quoting *Trautwein v. Sorgenfrei*, 391 N.E.2d 326, 331 (1979)).

The Ohio Supreme Court has observed that "the qualitative differences between civil and criminal proceedings [including the differing standards of proof, rules of discovery, and rules of evidence] militate against giving criminal judgments preclusive effect in civil or quasi-civil litigation." *State ex rel. Ferguson v. Court of Claims of Ohio, Victims of Crime Div.*, 786 N.E.2d 43, 48 (Ohio 2003) (citation and internal quotation marks omitted). Applying Ohio law, the Sixth Circuit has held that "a § 1983 plaintiff cannot use issue preclusion against his arresting officers in evaluating the constitutionality of the arrest even if the state court that acquitted the plaintiff found that a constitutional violation took place." *Potts v. Hill*, 77 F. App'x 330, 335 (6th Cir. 2003); *see also Thomas v. Plummer*, 489 F. App'x 116, 122–23 (6th Cir. 2012) ("[W]e do not allow a plaintiff to use issue preclusion offensively to prevent an officer from arguing that a search held unconstitutional in a state suppression proceeding was, in fact, constitutional in a later § 1983 suit.").

Here, Blue and the State of Ohio were the only parties in Blue's state criminal case. Neither Officer Adkins, nor Officer Doe, nor the City of Lorain was a party to Blue's criminal prosecution. The prosecutor did not represent Defendants and Defendants had no opportunity to litigate defenses they raise here, such as qualified immunity. It follows that none of the Defendants were a party or

in privity with a party involved in Blue's state criminal case and the doctrine of issue preclusion is inapplicable here.[3] Accordingly, Plaintiff's Motion is DENIED.

### B. Defendants' Motion

Defendants move to dismiss Plaintiff's *Monell* and intentional/negligent infliction of emotional distress claims pursuant to Federal Rule of Civil Procedure 12(b)(6).

When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the factual allegations of the complaint must be taken as true and construed in the light most favorable to the plaintiff. *Comtide Holdings, LLC v. Booth Creek Mgmt. Corp.*, 335 F. App'x 587, 588 (6th Cir. 2009) (citing *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008)). That said, the complaint must set forth "more than the bare assertion of legal conclusions." *In Re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993) (citing *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988)). The Court is not required to accept as true legal conclusions or unwarranted factual inferences. *In re Sofamor Danek Group, Inc.*, 123 F.3d 394, 400 (6th Cir. 1997) (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)).

---

[3] In Plaintiff's Motion, he submits that "Mr. Blue and the named Defendants are in privity and are the same parties as in [Blue's state criminal case]." (Doc. 1-4, at 4.) Not only is this factually incorrect (Defendants were not parties in the criminal prosecution) but, for the reasons explained above, it lacks legal precedent. To be sure, Plaintiff has not cited any case law to the contrary.

But even if there was privity between the Defendants and the parties in Blue's criminal prosecution, this Court seriously questions whether Blue's present claims were actually and directly litigated in the criminal prosecution. Blue seemingly concedes as much by casting the Common Pleas Court's order as merely "indicating" that Defendants are liable for each of his claims here, instead of pointing to any specific holdings in the order. In fact, the Common Pleas Court's order makes no reference to any training or supervision, trespass, or invasion or privacy. Rather, the order was limited to whether the search violated Blue's Fourth Amendment rights under criminal standards.

A cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility in [the] complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007). A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). The factual allegations in the pleading must be sufficient to raise the right to relief above the speculative level on the assumption that all the allegations in the complaint are true. *Twombly*, 550 U.S. at 555. The plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). A complaint that merely offers legal conclusions or a simple recitation of the elements of a cause of action will not meet this pleading standard. *Id.*

### 1. *Monell* Claim

A municipality can be liable under Section 1983 when an official "policy or custom" caused a violation of the plaintiff's constitutional rights. *Monell*, 436 U.S. at 695. A municipality cannot be held liable solely because it employs a tortfeasor. *Id.* at 691. Rather, an identified policy or custom must be the "moving force" behind the constitutional violation. *Searcy v. City of Dayton*, 38 F.3d 282, 287 (6th Cir. 2006). The plaintiff must "identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Id.* (internal quotation marks and citations omitted).

To maintain a *Monell* claim, a plaintiff must allege an illegal policy or custom by pleading facts suggesting one of the following: (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision-making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of

6

tolerance or acquiescence of federal rights violations. *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005).

Here, Plaintiff contends that the City of Lorain failed to properly train and/or supervise its officers and tolerated a custom of unlawful Fourth Amendment violations. The Court will address each theory in turn.

### a) Policy of Inadequate Training or Supervision

To maintain a *Monell* claim against a municipality based on inadequate training or supervision, a plaintiff must establish that: (1) the city's training program was inadequate for the tasks that officers must perform; (2) the inadequacy was the result of the city's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury. *Ciminillo v. Streicher*, 434 F.3d 461, 469 (6th Cir. 2006) (citing *Russo v. City of Cincinnati*, 953 F.2d 1036, 1046 (6th Cir. 1992)). The Sixth Circuit has described the second and third elements as "demanding." *Gambrel v. Knox Cnty.*, 25 F.4th 391, 408 (6th Cir. 2022).

To establish that a municipality acted with "deliberate indifference" to the fact that its inadequate training or supervision would lead its agents to violate constitutional rights, a plaintiff must prove that the violation of a clearly established right was a "known or obvious consequence" of the lack of training or supervision. *Id.* (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (quoting *Brown*, 520 U.S. at 410)). "This standard usually requires proof that a municipality's employees engaged in a 'pattern of similar constitutional violations' separate from the conduct that harmed the plaintiff." *Id.* (quoting *Connick*, 563 U.S. at 62).[4]

---

[4] The Supreme Court has left open the possibility that, in a "narrow range of circumstances," a plaintiff might prove deliberate indifference using only the single instance of unconstitutional

Further, establishing that the inadequate training was closely related to or actually caused the injury, "requires proof of the two types of causation from the common law of torts: but-for (or factual) causation and proximate causation." *Id.* (citing *Powers v. Hamilton Cnty. Pub. Def. Comm'n*, 501 F.3d 592, 608–11 (6th Cir. 2007)).

Here, Plaintiff pleads only conclusory allegations that the City of Lorain failed to train its officers on Fourth Amendment conduct and that "[t]he Lorain Police Department has a history of Fourth Amendment unlawful search violations dating back to 1990" (Doc. 1 ¶ 32, 35–38.) These conclusory allegations are insufficient to plead a plausible claim. *See Wright v. Louisville Metro Gov't*, 144 F.4th 817, 827 (6th Cir. 2025) ("When stripped of the legal conclusions, the Complaint contains no factual allegations indicating what the training policies were, why they were inadequate, how the city was deliberately indifferent, or how the failures related to the [plaintiffs'] injuries." (internal quotation marks and citation omitted)).

At most, Plaintiff alleges that "[t]he City of Lorain and the Lorain Police Department ha[ve] been placed on notice of Lorain Police Officers['] past Fourth Amendment unlawful search violations" through prior cases. Plaintiff then cites two cases: a criminal case from 1990 and a criminal came from 2006—but fails to explain how two decades-old criminal cases suggest the City of Lorain's deliberate indifference to a lack of training on Fourth Amendment conduct in the year

---

conduct against the plaintiff. *Connick*, 563 U.S. at 63–64. Plaintiff cites this general "single incident" principle but does not explain how it applies here. In fact, after citing the principle, Plaintiff reiterates that there are "several instances in which the Lorain Police Department's Fourth Amendment training and supervision has come under scrutiny by Ohio courts." (Doc. 9, at 4.) Nevertheless, to the extent Plaintiff intended to advance a single-incident theory, he has failed to plead any factual allegations suggesting the City of Lorain did not train its officers on Fourth Amendment conduct.

8

2024. Such scant allegations are insufficient to raise Plaintiff's right to relief above the speculative level, even assuming this allegation is true. *See Wright*, 144 F.4th at 827–28 ("[Plaintiffs] argue that we should take judicial notice of a 2023 Department of Justice report condemning various Louisville police department policies and training as inadequate. But even if we did that, the DOJ report would not rectify the [plaintiffs'] failure to connect the supposed inadequate training and unconstitutional customs and policies to their specific constitutional injuries.").

Even more, Plaintiff has completely failed to allege a causal connection between any inadequate training and the violation of his constitutional rights. Confusingly, Plaintiff alleges that "[t]here is no indication that Officer Adkins or the several other Lorain Police officers have received proper Fourth Amendment training or supervision since September 6, 2024"—the day of the alleged unconstitutional search of his bag. (Doc. 1 ¶ 37.) Simply put, training that did or did not occur after the search of his property cannot be the but-for or proximate cause of any harms caused by the search.

For these reasons, Plaintiff has failed to sufficiently state a *Monell* claim based on a policy of inadequate training or supervision.

### b) Custom of Tolerance

"To sustain a *Monell* claim and hold a municipal entity liable for a custom of tolerance or acquiescence, a plaintiff must show: (1) the existence of a clear and persistent pattern of illegal activity; (2) notice or constructive notice on the part of the defendant; (3) the defendant's tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction; and (4) that the defendant's custom was the

'moving force' or direct causal link in the constitutional deprivation." *Wallace v. Coffee Cnty.*, 852 F. App'x 871, 876 (6th Cir. 2021).

Again, Plaintiff has failed to plead any factual allegations in support of his theory. Instead, he includes only conclusory allegations that "Officer Adkins and the several other Lorain Police officers' conduct on September 6, 2024, proves that the City of Lorain and the Lorain Police Department tolerate a custom of unlawful Fourth Amendment violations" and that "[t]his conduct by the City of Lorain and the Lorain Police Department Defendants has ca[u]sed Mr. Blue to suffer harm. (Doc. 1 ¶¶ 38–39.) Further, as mentioned above, his unexplained reference to two, decades-old criminal cases does not save his claim. *See Wright*, 144 F.4th at 827–28.

Accordingly, Plaintiff has failed to sufficiently state a *Monell* claim based on a custom of tolerance. And, for all the aforementioned reasons, Defendants' Motion is GRANTED and Plaintiff's *Monell* claims (Counts Two and Three) are DISMISSED.

### 2. Intentional Infliction of Emotional Distress

To state a claim for intentional infliction of emotional distress, a plaintiff must allege: (1) the defendant intended to cause, or knew or should have known that his actions would result in serious emotional distress; (2) the defendant's conduct was so extreme and outrageous that it went beyond all possible bounds of decency and can be considered completely intolerable in a civilized community; (3) the defendant's actions proximately caused psychological injury to the plaintiff; and (4) the plaintiff suffered serious mental anguish of a nature no reasonable person could be expected to endure. *Woods v. Sharkin*, 192 N.E.3d 1174, 1200 (Ohio Ct. App. 2022) (citation omitted).

10

"Ohio courts define extreme and outrageous conduct exceedingly narrow." *Wolfe v. Thermo Fisher Scientific, Inc.*, 2009 WL 1255023, *2 (S.D. Ohio, 2009) (citing *Godfredson v. Hess & Clark, Inc.*, 173 F.3d 365, 376 (6th Cir. 1999)) "[T]o say that Ohio courts narrowly define 'extreme and outrageous' conduct would be something of an understatement." *Baab v. AMR Servs. Corp.*, 811 F. Supp. 1246, 1269 (N.D. Ohio 1993). Ohio law does not consider conduct to be "extreme and outrageous" merely because it is tortious or criminal or because the defendant intended to inflict emotional distress or acted with malice. *Yeager v. Local Union 20*, 6 Ohio St.3d 369, 374–375, 453 N.E.2d 666 (1983) (quoting Restatement of the Law 2d, Torts 73, Section 46, comment d (1965)). To reach the requisite level of "extreme and outrageous," the conduct must "go beyond all possible bounds of decency, such as to be regarded as atrocious and utterly intolerable in a civilized community." It must be a case in which "the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Id.* at 375.

Further, "serious" emotional distress must be "severe and debilitating." *Kovac v. Superior Dairy, Inc.*, 930 F. Supp. 2d 857, 870 (N.D. Ohio 2013) (quoting *Paugh v. Hanks*, 451 N.E.2d 759 (Ohio 1983)). Examples "include traumatically induced neurosis, psychosis, chronic depression, or phobia." *180 Indus., LLC v. Brunner Firm Co. LPA*, 2021 WL 4955268, at *2 (6th Cir. July 13, 2021) (internal citation omitted) (quoting *Paugh*, 451 N.E.2d at 765).

Here, Plaintiff alleges that he was incarcerated on drug charges for 13 months after the officers' search of his bag. During his incarceration, his sister died. He contends that missing the passing of his sister caused him to "suffer severe emotional distress." (Doc. 1 ¶ 58.)

While missing the death of a relative is, of course, upsetting, Plaintiff's allegations do not meet the exacting standard of a claim for intentional infliction of emotional distress under Ohio law. First, Plaintiff does not allege that any defendant intended to cause him serious emotional distress. Further, Plaintiff does not allege that he suffered any sufficiently serious mental anguish, such as traumatically induced neurosis, psychosis, chronic depression, or phobia. Finally, he fails to allege any conduct sufficiently "outrageous" under Ohio law.

For these reasons, Defendants' Motion is GRANTED, and Plaintiff's claim for Intentional Infliction of Emotional Distress (Count Six) is DISMISSED.

### 3.  Negligent Infliction of Emotional Distress

Ohio law recognizes a cause of action for negligent infliction of serious emotional distress, which "allows a plaintiff to recover for purely emotional injuries without proof of a contemporaneous physical injury when the plaintiff is directly involved in an accident." *Ingram v. Progressive Motors, Inc.*, 254 N.E.3d 265, 269 (Ohio Ct. App. 2024) (citing *Heiner v. Moretuzzo*, 652 N.E.2d 664 (Ohio 1995)). Accordingly, "Ohio courts have limited recovery for claims alleging negligent infliction of emotional distress to situations such as where the plaintiff was a bystander to an accident or was in fear of physical consequences to his own person." *Gearing v. Nationwide Ins. Co.*, 665 N.E.2d 1115, 1120 (Ohio 1996).

Here, Plaintiff makes no allegations that he was bystander to an accident or was in fear of physical consequences to his own person. As such, Plaintiff has failed to plead a claim for negligent infliction of emotional distress under Ohio law. Defendants' Motion is GRANTED, and Plaintiff's claim for Negligent Infliction of Emotional Distress (Count Six) is DISMISSED.

**CONCLUSION**

For the foregoing reasons, Plaintiffs'[sic] Motion for Partical[sic] Summary Judgment (Doc. 1-4) is DENIED and Defendants' Motion to Dismiss Pursuant to Civ. R. 12(b)(6) (Doc. 6) is GRANTED. Counts Two, Three, and Six are DISMISSED. This case will proceed as to Count One, Count Four, and Count Five only.

IT IS SO ORDERED.

PATRICIA A. GAUGHAN
United States District Judge

**Date:** August 5, 2026